Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 850
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

PROPOSED ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| DFW BOAT SPECIALIST, LLC | § | Case no. 23-40316-11 |
| | § | |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |

**PLAN OF REORGANIZATION OF DFW BOAT SPECIALIST, LLC PURSUANT TO SECTION 1190
OF THE BANKRUPTCY CODE DATED MAY 3, 2023**

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

DFW Boat Specialist, LLC ("Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("Court") on February 22, 2023. The Debtor operates a automobile dealership along with a automotive and boat repair business in Denton, Texas. The Debtor proposes to restructure its current indebtedness and continue its operations to provide a dividend to the creditors of Debtor.

## Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. There are different types of Chapter 11 designations. In this case, the Debtor has chosen to proceed under a Subchapter V- Small Business Debtor Reorganization ("Subchapter V"). Pursuant to a Subchapter V Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan that has not accepted the plan.

## Explanation of the Process of Confirmation

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

### Voting Procedures

**Unimpaired Class**. Claimants in Classes 1 and 9 are not impaired under the Plan. Such Classes are deemed to have accepted the Plan.

**Impaired Classes**. The Class 2 through 8 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 8. Each holder of an Allowed Claim in Classes 2 through 8 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 850, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

### Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with at least as much as they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

### ARTICLE II
### DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is

**DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE DATED MAY 3, 2023 - Page 3**

Case 23-40316   Doc 60   Filed 05/04/23   Entered 05/04/23 15:37:02   Desc Main
Document      Page 4 of 17

no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6. **"Case"** shall mean this Chapter 11 case.

7. **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. **"Claimant"** shall mean the holder of a Claim.

9. **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

DEBTOR'S PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE
DATED MAY 3, 2023 - Page 4

12.     **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.     **"Court"** shall mean the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.     **"Creditor"** shall mean any person having a Claim against Debtor.

15.     **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.     **"Debtor"** shall mean DFW Boat Specialist, LLC.

17.     **"Disbursing Agent"** shall mean the Reorganized Debtor even in the event of a confirmation under 11 U.S.C. §1191(b).

18.     **"Effective Date"** shall mean thirty days after the Final Confirmation Date.

19.     **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20.     **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

21.     **"Final Confirmation Date"** shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22.     **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23.     **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, February 22, 2023.

24.     **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25.     **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26. **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27. **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28. **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29. **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

30. **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

31. **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

32. **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

### III
### REPRESENTATIONS

NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV

### FINANCIAL PICTURE OF THE DEBTOR

The Debtor was formed in September of 2020. The Debtor business began as a boat repair business. As the business grew began to see more opportunity in also providing automotive repairs. Over time, the Debtor was approached about selling vehicles. In February 2022, the Debtor started AR Motors as an assumed name and began selling vehicles.
The Debtor entered into a series of agreements with various automobile finance companies who provided the Debtor with inventory financing, commonly know as floor planning. As the Debtor's automobile selling business quickly expanded the demands for payments by the floor planners reduced the Debtor's available cash and the Debtor was forced to incur certain high interest

short term debt. The high interest short term repayments caused the Debtor fail further behind on it daily operations bills. The Bankruptcy was filed to restructure the overall debts of the company to maintain operations.

### Post Petition Operations

Once the bankruptcy was filed, the Debtor experienced a number of unexpected issues which have made the operations difficult. Despite having never been late on any payments or have never defaulted in any way, immediately upon the filing the Debtor three major floor planners, Westlake Financial Company, LLC, Next Gear Capital, Inc. and XL Funding abd Axle Funding refused to continue providing the Debtor with inventory under the floor plan agreements. Westlake, also refused to release monies do the Debtor. The Debtor was forced to file Motions with the bankruptcy Court to get monies released by Westlake. Additionally, even though the Debtor has timely made all payments under the terms of the Court's Cash Collateral Order to the floor planners, the floor planners continuously refuse to timely provide titles for paid off vehicles to the Debtor and Debtor's customers.

As a result of these continued actions, the Debtor has had to close two of its locations and completely revamp its business. The Court has awarded the Debtor sanctions against Westlake for its actions.

### Future Income and Expenses Under the Plan

The Debtor filed this case on February 22, 2023 and has been able to continue operations albeit in a different manner than when it filed. As set forth above, as a result of the in ability to receive any cooperation from the floor planner, the Debtor has had to reduce its foot print, and move into automobile and boat repairs. Fortunately, these area have proved profitable. The Debtor continued to sell it reaming inventory and those vehicles that were not financed by the floor planners The Debtor intends to continue operations. Attached hereto as Exhibit "A" are projections of gross income, expenses and operating income for the next year. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 50% by Richard Gay and 50% by Andrew Kolka. After confirmation the ownership will remain the same.

ARTICLE V.

### ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates a automobile and boat repair company. The Debtor additionally, maintain an automobile dealership. The Debtor's assets consist of the vehicle for sale, the equipment and inventory in the service area, and the funds in the bank. The value of the Debtor's

assets, if liquidated, would not provide a greater dividend to the unsecured creditors than proposed under this Plan.

A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit "B"**.

## ARTICLE VI
## SUMMARY OF PLAN OF REORGANIZATION

The Debtor will continue in business. The Debtor's Plan will break the existing claims into 9 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts**: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan. Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000.

The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants (Allowed Priority Tax Creditor Claims)** are impaired and shall be satisfied as follows: Denton County has filed a Proof of Claim for tax year 2023 for business property taxes in the total amount of $2,340.05 ("Ad Valorem Tax Claim"). The Allowed Ad Valorem Tax Creditor Claims on shall be paid in full over 36 monthly payments commencing on the Effective Date. The Ad Valorem Taxes will receive post-petition pre-Effective Date interest at the state statutory rate of 12% per annum and post-Effective Date interest at the rate of 12% per annum. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Ad Valorem Tax Claims until paid in full as called for by this Plan.

Class 2 creditors are impaired under this Plan.

**Class 3 Claimant (Allowed Internal Revenue Service Claims)** are impaired and shall be satisfied as follows: The Allowed Amount of Allowed Internal Revenue Service Claims shall be paid out of the revenue from the continued operations of Debtor. The Internal Revenue Service (IRS) has filed a Priority Proof of Claim in the amount of $27,752.14. The IRS Allowed Priority Claim it will be paid in full over a 36 equal monthly payments commencing on the Effective Date, with interest at a rate of 3% per annum.

Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of a Federal (or state) tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

(a) If the Debtor or its successor in interest fails to make any Plan payments, and deposits of any currently accruing employment or sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(b) If the United States declares the debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

(c) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default and upon the third event of default, the IRS may proceed to collect on all accounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.

(d) The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(e) All payment will be sent to: Chastina McMillion/ IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of Akora to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth in paragraph (4)(a)-(d) above.

The Class 3 claimant is impaired under this Plan.

      **Class 4 Claimant** (Allowed Secured Claim of Westlake Flooring Company, LLC) are impaired and shall be satisfied as follows: Westlake Flooring Company, LLC ("Westlake") has filed a Proof of Claim asserting a secured claim in amount of $135,284.30. On or about March 14, 2022, the Debtor executed that certain Promissory Note and Loan Security Agreement with Westlake ("Agreement"). The Agreement provides the terms and conditions which Westlake would advance funds to the Debtor to purchase vehicles. As of the filing of this Plan, the total amount due Westlake under the Agreement was $57,001.62 ("Allowed Westlake Secured Claim"). The Allowed Secured Westlake Claim is represented by 7 vehicles ("Westlake Collateral"). The Westlake Collateral is of the filing date of this Plan, listed on the attached Exhibit C. The Debtor may sell some, or all, of the Westlake Collateral by the Confirmation Date. The amount of the Allowed Westlake Secured Claim shall be reduced by the amount received by Westlake upon the sale of any of the Westlake Collateral. In the event, any of the Westlake Collateral remains unsold by the Confirmation Date, the Debtor shall surrender, within 5 days of the Confirmation Date to Westlake the number of vehicles (and/or cash) of the Westlake Collateral necessary to pay the remaining balance of the Allowed Westlake Secured Claim as of the Confirmation Date. The value of the Westlake Collateral to be surrendered and credited against the Allowed Westlake Secured Claim shall be based upon the Manhiem Market Rate as set forth on Exhibit C. In the event, when Debtor pays the Allowed Westlake Secured Claim as proved herein, any additional Westlake Collateral remains in the Debtor's possession, Westlake within 10 days of the Confirmation Date deliver to Debtor any vehicle titles to the remaining Westlake Collateral. Westlake shall retain its liens on the Westlake Collateral, until paid in full as set forth in this Plan.

      The Class 4 Creditor is impaired under this Plan.

      **Class 5 (Allowed Secured Claim of XL Funding, LLC dba Axle Funding)** is impaired and shall be satisfied as follows: On or about November 2 ,2022 Debtor executed that certain Demand Promissory Note and Security Agreement ("Agreement") with XL Funding, LLC dba Axle Funding ("XL"). The Agreement provides the terms and conditions which XL would advance funds to the Debtor to purchase vehicles. As of the filing of this Plan, the total amount due XL under the Agreement was $14,333 ("Allowed XL Secured Claim"). The Allowed Secured XL Claim is represented by 4 vehicles ("XL Collateral"). The XL Collateral is of the filing date of this Plan, listed on the attached Exhibit D. The Debtor may sell some, or all, of the XL Collateral by the Confirmation Date. The amount of the Allowed XL Secured Claim shall be reduced by the amount received by XL upon the sale of any of the XL Collateral. In the event, any of the XL Collateral remains unsold by the Confirmation Date, the Debtor shall surrender, within 5 days of the Confirmation Date to XL the number of vehicles (and/or cash) of the XL Collateral necessary to pay the remaining balance of the Allowed XL Secured Claim as of the Confirmation Date. The value of the XL Collateral to be surrendered and credited against the Allowed XL Secured Claim shall be based upon the Manhiem Market Rate as set forth on Exhibit D. In the event, when Debtor pays the Allowed XL Secured Claim as proved herein, any additional XL Collateral remains in the Debtor's possession, XL within 10 days of the Confirmation Date deliver to Debtor any vehicle titles to the

remaining XL Collateral. XL shall retain its liens on the XL Collateral, until paid in full as set forth in this Plan.

The Class 5 claim is impaired under this Plan.

**Class 6 (Allowed Secured Claim of NextGear Capital, Inc.)** is impaired and shall be satisfied as follows: On or about June 6 ,2022 Debtor executed that certain Demand Promissory Note and Security Agreement ("Agreement") with Next Gear Capital, Inc. ("NextGear"). The Agreement provides the terms and conditions which NestGear would advance funds to the Debtor to purchase vehicles. As of the filing of this Plan, the total amount due NextGear under the Agreement was $126,557.75 ("Allowed NextGear Secured Claim"). The Allowed Secured NextGear Claim is represented by 25 vehicles ("NextGear Collateral"). The NextGear Collateral is of the filing date of this Plan, listed on the attached Exhibit E. The Debtor may sell some, or all, of the NextGear Collateral by the Confirmation Date. The amount of the Allowed NextGear Secured Claim shall be reduced by the amount received by NextGear upon the sale of any of the NextGear Collateral. In the event, any of the NextGear Collateral remains unsold by the Confirmation Date, the Debtor shall surrender, within 5 days of the Confirmation Date to NextGear the number of vehicles (and/or cash) of the NextGear Collateral necessary to pay the remaining balance of the Allowed NextGear Secured Claim as of the Confirmation Date. The value of the NextGear Collateral to be surrendered and credited against the Allowed NextGear Secured Claim shall be based upon the Manhiem Market Rate as set forth on Exhibit E. In the event, when Debtor pays the Allowed NextGear Secured Claim as proved herein, any additional NextGear Collateral remains in the Debtor's possession, NeatGear within 10 days of the Confirmation Date deliver to Debtor any vehicle titles to the remaining NextGear Collateral. NextGear shall retain its liens on the NextGear Collateral, until paid in full as set forth in this Plan.

The Class 6 claim is impaired under this Plan.

**Class 7 (Allowed Non-insider Unsecured Claims)** are impaired and shall be satisfied as follows: All Allowed Non-Insider Unsecured creditors shall share pro rata in the unsecured creditors pool. The Debtor shall make monthly payments commencing thirty (30) days after the Effective Date of $1,500 into the unsecured creditors' pool. The amount represents the Debtor's disposable income as that terms is defined in 11 U.S.C. § 1191(d). The Debtor shall make distributions to the Class 7 creditors every 90 days commencing 90 days after the first payment into the unsecured creditors pool. The Debtor shall make 36 payments into the unsecured creditors pool.

The Class 7 creditors are impaired.

**Class 8 (Allowed Insider Unsecured Creditor Claims)** are impaired and shall be satisfied as follows: The Allowed Insider Unsecured Claims shall receive no distribution under this Plan.

The Class 8 Creditors are impaired under this Plan.

**Class 9 ( Current Owner)** is not impaired under the Plan and shall be satisfied as follows: The current owners will receive no payments under the Plan, however, they will be allowed to retain their ownership in the Debtor.

Class 9 Claimants are not impaired under the Plan.

## ARTICLE VII
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

## ARTICLE VIII.
## FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the historical operations of the business. Based upon the projections, the Debtor believes the Plan to be feasible.

## ARTICLE IX
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction to enforce or interpret this Plan shall be retained under the Plan.

## ARTICLE X.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. In Debtor's case the assets the Debtor maintains that are not subject to the floorplan agreements have a value in their current state of $35,000. At a forced sale the Debtor believes the actual amount received would be less. The amount owed to the tax creditors is $30,000, therefore, a liquidation would not result in a distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XI
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected except the current lease with its Landlord at the location of 2401 Wittington, Denton Texas which is specifically assumed by this Plan.

## ARTICLE XII
## EVENTS OF DEFAULT AND EFFECT THEREOF

Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within fifteen (15) days of receipt of written notice of such default to Reorganized Debtor at Richard Gay at richard@armotorstxsales.com. The Debtor will be entitled to no more than two (2) notice of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated.

## ARTICLE XIII
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XIV
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

## ARTICLE XVI
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case all creditors will be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

## ARTICLE XVII
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate.

Dated: May 3, 2023.

Respectfully submitted,

DF Boat Specialists, LLC

*[signature]*

By: Richard Gay
Its: Managing Member

### Projected Service Income October 2023

| | |
|---|---|
| Service/Repairs | $29,040.00 |
| Parts/Materials | $9,240.00 |
| Boat Upswing winter | $4,500.00 |
| Saturday labor | $3,520.00 |
| Saturday Parts/Materials | $1,120.00 |
| **Operating Expenses** | |
| Payroll | $30,000.00 |
| Seasonal payroll | $2,000.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $6,600.00 |
| Saturday Parts/Materials | $800.00 |
| **Total disposable Income** | **$970.00** |

### Projected Service Income November 2023

| | |
|---|---|
| Service/Repairs | $27,720.00 |
| Parts/Materials | $8,820.00 |
| Boat Upswing winter | $6,500.00 |
| Saturday labor | $2,640.00 |
| Saturday Parts/Materials | $840.00 |
| **Operating Expenses** | |
| Payroll | $30,000.00 |
| Seasonal payroll | $1,500.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $6,300.00 |
| Saturday Parts/Materials | $600.00 |
| **Total disposable Income** | **$1,070.00** |

### Projected Service Income December 2023

| | |
|---|---|
| Service/Repairs | $25,080.00 |
| Parts/Materials | $7,980.00 |
| Boat Upswing winter | $6,500.00 |
| Saturday labor | $4,400.00 |
| Saturday Parts/Materials | $1,400.00 |
| **Operating Expenses** | |
| Payroll | $30,000.00 |
| Seasonal payroll | $1,200.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $5,700.00 |
| Saturday Parts/Materials | $1,000.00 |
| **Total disposable Income** | **$410.00** |

### Projected Service Income January 2024

| | |
|---|---|
| Service/Repairs | $31,460.00 |
| Parts/Materials | $10,780.00 |
| Saturday labor | $3,520.00 |
| Saturday Parts/Materials | $1,120.00 |
| **Operating Expenses** | |
| Payroll | $30,000.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $7,700.00 |
| Saturday Parts/Materials | $800.00 |
| **Total disposable Income** | **$1,330.00** |

### Projected Service Income February 2024

| | |
|---|---|
| Service/Repairs | $35,200.00 |
| Parts/Materials | $11,200.00 |
| Saturday labor | $3,520.00 |
| Saturday Parts/Materials | $1,120.00 |
| **Operating Expenses** | |
| Payroll | $33,500.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $8,000.00 |
| Saturday Parts/Materials | $800.00 |
| **Total disposable Income** | **$1,690.00** |

### Projected Service Income March 2024

| | |
|---|---|
| Service/Repairs | $35,840.00 |
| Parts/Materials | $11,760.00 |
| Saturday labor | $4,400.00 |
| Saturday Parts/Materials | $1,400.00 |
| **Operating Expenses** | |
| Payroll | $35,000.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $8,400.00 |
| Saturday Parts/Materials | $1,000.00 |
| **Total disposable Income** | **$1,950.00** |

### Projected Service Income April 2024

| | |
|---|---|
| Service/Repairs | $33,880.00 |
| Parts/Materials | $10,780.00 |
| Saturday labor | $3,520.00 |
| Saturday Parts/Materials | $1,120.00 |
| Boat uptake spring | $5,000.00 |
| **Operating Expenses** | |
| Payroll | $36,500.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $7,700.00 |
| Saturday Parts/Materials | $800.00 |
| **Total disposable Income** | **$2,250.00** |

### Projected Service Income May 2024

| | |
|---|---|
| Service/Repairs | $33,880.00 |
| Parts/Materials | $10,780.00 |
| Saturday labor | $3,520.00 |
| Saturday Parts/Materials | $1,120.00 |
| Boat uptake spring | $4,500.00 |
| **Operating Expenses** | |
| Payroll | $36,500.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $7,700.00 |
| Saturday Parts/Materials | $800.00 |
| **Total disposable Income** | **$1,750.00** |

### Projected Service Income June 2024

| | |
|---|---|
| Service/Repairs | $34,200.00 |
| Parts/Materials | $11,200.00 |
| Saturday labor | $4,400.00 |
| Saturday Parts/Materials | $1,400.00 |
| Boat uptake spring | $3,200.00 |
| **Operating Expenses** | |
| Payroll | $36,500.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $8,000.00 |
| Saturday Parts/Materials | $1,000.00 |
| **Total disposable Income** | **$1,850.00** |

### Projected Service Income July 2024

| | |
|---|---|
| Service/Repairs | $40,100.00 |
| Parts/Materials | $11,760.00 |
| Saturday labor | $3,520.00 |
| Saturday Parts/Materials | $1,120.00 |
| **Operating Expenses** | |
| Payroll | $37,300.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $9,450.00 |
| Saturday Parts/Materials | $800.00 |
| **Total disposable Income** | **$1,900.00** |

### Projected Service Income August 2024

| | |
|---|---|
| Service/Repairs | $38,720.00 |
| Parts/Materials | $12,320.00 |
| Saturday labor | $4,400.00 |
| Saturday Parts/Materials | $1,400.00 |
| **Operating Expenses** | |
| Payroll | $37,300.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $8,800.00 |
| Saturday Parts/Materials | $1,000.00 |
| **Total disposable Income** | **$2,690.00** |

### Projected Service Income September 2024

| | |
|---|---|
| Service/Repairs | $41,580.00 |
| Parts/Materials | $13,320.00 |
| Saturday labor | $3,520.00 |
| Saturday Parts/Materials | $1,120.00 |
| **Operating Expenses** | |
| Payroll | $39,500.00 |
| Leases | $3,300.00 |
| Utilities | $750.00 |
| Insurance | $500.00 |
| Advertisement | $1,500.00 |
| Software | $1,000.00 |
| Parts/Materials | $9,450.00 |
| Saturday Parts/Materials | $800.00 |
| **Total disposable Income** | **$2,740.00** |

EXHIBIT 'B'

LIQUIDATION ANALYSIS

| ASSETS[1] | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| Machinery | 5,000 | 10,000 |
| Office equipment | 1,000 | 2,500 |
| A/R | 25,000 | 25,000 |
| LIABILITIES | | |
| ADMINISTRATIVE | 15,000 | 15,000 |
| TAXES | 30,000 | 30,000 |
| UNSECURED CREDITORS | 1,300,000[2] | 300,000 |
| DISTRIBUTION TO UNSECURED | 0% | 20% |

---

[1] Under the Plan the vehicles that have been floorplanned will be sold or returned to the lenders, resulting in no secured claims to those lenders.

[2] Under the Plan the insider claims will be subordinated to the general unsecured creditors.